UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEIDI PETERSON,<br><br>    Plaintiff,<br><br>    v.<br><br>BOARD OF GOVERNORS OF THE<br>FEDERAL RESERVE SYSTEM,<br><br>    Defendant. | Civil Action No. 14-1053 (UNA) |

**MEMORANDUM OPINION**

This matter comes before the Court on review of *pro se* Plaintiff Heidi Peterson's application to proceed *in forma pauperis*. The Court will grant the application, but dismiss the Complaint for lack of subject-matter jurisdiction because Plaintiff has not established standing to sue. See Fed. R. Civ. P. 12(h)(3) (requiring court to dismiss an action "at any time" if it determines that subject-matter jurisdiction is lacking); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987) ("[T]he defect of standing is a defect in subject matter jurisdiction.").

**I.    Background**

Plaintiff Heidi Peterson alleges that the "Federal Reserves [*sic*] is accused of artificially holding up housing prices through their quantitative easing policies." Compl. at 2. According to Plaintiff, this leads to "homelessness" and "contribut[es] to the change in birth rate and racial demographic of the country[.]" Id. at 4. Plaintiff has explained how the policies had an effect on her and her family:

> I was not able to live in what America offered me as affordable
> housing for my safety and safety of my child and I was not able to
> afford a home in a white community where I would probably not

1

> of been a target of attack and discrimination because me like many others can't enter the higher end housing market [*sic*].

Id. at 2.

Plaintiff refers to a specific attack that she was subjected to when "[t]he police refused to take police reports or investigate or send . . . prosecutors" when a gang took over Plaintiff's house. Id. She claims that she needed to live in Detroit, "due to the fact it was one of the only places [she] had access to affordable housing, as [she] most likely could not get a loan." Id. The gang purportedly took over her home because she could not live there while pregnant or with a child because there was lead-paint toxin. See id.

Plaintiff requests that this Court stop the "Federal Reserve[']s Quantitative Easing program," order the sale of mortgage-backed securities in the open market, and direct the Federal Reserve to "[r]epay the disenfranchised people . . . treble damages . . . by possibly placing them in homes they have been unable to buy or rent due to the artificial price fixing" among other relief. Id. at 7-8.

**II.     Analysis**

Article III of the Constitution limits the power of the federal judiciary to the resolution of "Cases" and "Controversies." Because "standing is an essential and unchanging part of the case-or-controversy requirement of Article III," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), finding that a plaintiff has standing is a necessary "predicate to any exercise of [the Court's] jurisdiction." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996); see also Allen v. Wright, 468 U.S. 737, 750 (1984) (discussing case-or-controversy requirement). "This limitation is no mere formality: it 'defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded.'" Dominguez v. UAL Corp., 666 F.3d 1359, 1361 (D.C. Cir. 2012) (quoting Allen, 468 U.S. at 750).

The doctrine of standing "requires federal courts to satisfy themselves that 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction." Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (citing Warth v. Seldin, 422 U.S. 490, 498-99 (1975)). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" Clapper v. Amnesty Intern. USA, 133 S. Ct. 1138, 1147 (2013) (quoting Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743, 2747 (2010)).

While Plaintiff's situation may be unfortunate, her claim fails to satisfy the last two elements of standing. It is unclear how the Federal Reserve's policies caused Plaintiff the harm she alleges, and it is even more speculative to assume that a favorable decision by this Court will provide her the relief she desires.

Assuming Plaintiff's loss of her home is a "concrete and particularized" injury, "the line of causation between [the Federal Reserve's] conduct" and her injuries "is attenuated at best." See Allen, 468 U.S. at 757; see also Vardon v. Fed. Reserve Sys., No. 11-1565, 2011 WL 3847168, at *1 (D.D.C. Aug. 31, 2011) (dismissing plaintiff's claim against Federal Reserve because Plaintiff's financial losses were not fairly traceable to Federal Reserve's allegedly failed policies), aff'd, 448 Fed. App'x 77 (D.C. Cir. 2012) (*per curiam*). Plaintiff claims that she had to live in Detroit because "she most likely could not get a loan." See Compl. at 2. Then she alleges that because she had to live in Detroit, there was lead paint; when she became pregnant, she needed to move out. See id. After this, a gang took over and the police did not investigate. See id. The injury to Plaintiff is "highly indirect and 'results from the independent action of [multiple] third part[ies] not before the court.'" See Allen, 468 U.S. at 758 (quoting Simon v. Eastern Kentucky Welfare Rights Org., 426 U.S. 26, 42 (1976)). Therefore, even if the Federal

Reserve's policy adversely affected the housing market, it is entirely speculative to assume that Plaintiff's harms were "fairly traceable" to Defendant's conduct because there are too many links in the chain of causation. See Allen, 468 U.S. at 759 ("The links in the chain of causation between the challenged Government conduct and the asserted injury are far too weak for the chain as a whole to sustain respondents' standing.").

Similarly, any inquiry into whether Plaintiff's injuries are redressable by this Court would involve substantial guesswork. See ASARCO Inc. v. Kadish, 490 U.S. 605, 614 (1989) (opinion of Kennedy, J.) ("[I]t is pure speculation whether the lawsuit would result in any actual tax relief for respondents."). If this Court were to order the Federal Reserve to stop its Quantitative Easing Program or order the sale of mortgaged-backed securities, the possible effect on the housing market would be entirely unclear. But even if the Court assumes that Plaintiff's proposed policies would be beneficial to the United States economy, it is "pure speculation" to assume that this would fix Plaintiff's problem of not being able to live in her desired house in her desired neighborhood.

The Court, accordingly, will an issue an Order dismissing the case without prejudice.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: June 20, 2014